UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                              Bankruptcy No. 08-30689
                                                                    Chapter 7
Jonathan W. and Stephanie J. Deitz,


                              Debtors.
_____/

## MEMORANDUM AND ORDER

This case is before the Court on the trustee's objection to proof of claim filed by Claimant Charles Chang on April 15, 2010. A stipulation between Chang and Wayne Drewes, the chapter 7 trustee assigned to this case, was filed on September 3, 2010. A hearing was held on September 7, 2010, and the following constitute the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT

The facts in this matter are not disputed. Chang and the trustee filed a stipulation with the following agreed upon facts:

1. In early June 2007, Charles Chang and Cypress CB, LLC, entered into an agreement with Debtor Jonathan Deitz and Jamie Fettig for the sale of an apartment building in Grand Prairie, Texas, otherwise known as Cypress Place Apartments (hereinafter referred to as "the property").

2. Debtor, Fettig, Chang, and Cypress CB executed a series of documents reflecting their understandings and agreements. The relevant documents include:

    a. Contract for Sale dated June 7, 2007.

    b. Escrow Agreement dated June 1, 2007.[1]

    c. Property Management Agreement, undated.

3. The escrow agreement required Chang to deliver various documents including a special warranty deed, a bill of sale, and an assignment of leases and contracts to the escrow company, in exchange for Debtor and Fettig depositing $313,699.32 into escrow.

4. The escrow agreement also provided that certain monies deposited into escrow shall be paid to settle accounts with lenders and liens. Additionally, $150,000.00 of the money deposited into escrow was immediately released to Chang.

5. The escrow agreement provided that Debtor and Fettig should use their efforts to sell or refinance the property.

6. The escrow agreement contained a section providing a personal guarantee to Chang from Debtor and Fettig. The relevant portions provide:

    S.    DIETZ, FETTIG AND JJ HEREBY INDEMNIFY, HOLD HARMLESS, AND AGREE TO DEFEND CHANG, BEVACQUA AND THE LLC FROM AND AGAINST ANY LOSS, COST, EXPENSE, LIABILITY, CLAIM OR ACTION (INCLUDING REASONABLE ATTORNEYS' FEES) RESULTING FROM ANY ENTRY OR ANY WORK PERFORMED BY OR ON BEHALF OF DEITZ, FETTIG AND/OR JJ, OR ANY EMPLOYEE AGENT, PRINCIPAL OF, OR INDEPENDENT CONTRACTOR WITH DEITZ, FETTIG AND/OR JJ, UPON THE PROPERTY, OR ANY LIEN OR ENCUMBRANCE ASSERTED BY ANY THIRD PARTY RESULT THEREOF, OR ANY BREACH OF THIS ESCROW AGREEMENT AND/OR THE MANAGEMENT AGREEMENT BY DEITZ, FETTIG AND/OR JJ. DEITZ,

---

[1] The Court notes that the first page of the escrow agreement is dated June 1, 2007, however it is signed by the escrow agent as accepted and agreed to on June 7, 2007.

> FETTIC AND JJ, ON BEHALF OF THEMSELVES AND THEIR EMPLOYEES, AGENTS, REPRESENTATIVES, AND CONTRACTORS, HEREBY RELEASE AND DISCHARGE CHANG, BEVACQUA AND THE LLC AND THEIR SUCCESSORS AND ASSIGNS AND THE EMPLOYEES, AGENTS, AND REPRESENTATIVES OF CHANG, BEVAQCUA AND THE LLC AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS FROM ANY AND ALL LIABILITIES, CLAIMS, CAUSES OF ACTION, DAMAGES, EXPENSES, COSTS, PENALTIES, AND LOSSES, OF WHATEVER KIND OR NATURE, ARISING OUT OF OR RESULTING FROM ANY INJURY OR DAMAGE INCURRED OR SUSTAINED BY DEITZ, FETTIG OR JJ OR THEIR EMPLOYEES, AGENTS, REPRESENTATIVES, OR CONTRACTORS ON OR WITH RESPECT TO THE PROPERTY OR WITH RESPECT TO ANY WORK, EXAMINATION, OR INSPECTION PERFORMED ON THE PROPERTY, THE FOREGOING PROVISIONS SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS ESCROW AGREEMENT.

  T.  Deitz and Fettig jointly and severally guarantee to Chang, Bevacqua and the LLC the full, complete and prompt payment and performance of all obligations (monetary and otherwise) of Deitz, Fettig and/or JJ pursuant to this Escrow Agreement and the Management Agreement.

7. The contract for sale between the parties contained a section providing for liquidated damages. The relevant section states:

> 3. Default
> Should the Buyer default in completing the terms and conditions of this Agreement, $150,000.00 of the Earnest Money paid by Buyer shall be forfeited and retained by Seller as Seller's sole and exclusive remedy for such breach as liquidated damages. In establishing the amount of portion of Earnest Money paid hereunder and in designating such as liquidated damages, both Seller and Buyer specifically acknowledge that actual damages resulting from Buyer's breach are impractical or extremely difficult to ascertain. A reasonable endeavor was made by Seller and Buyer to fix a fair and reasonable compensation for Buyer's breach and the amount established is acknowledged by both Seller and Buyer to bear a reasonable relation to probable damage and is

       not disproportionate to any damages that could reasonably be anticipated.

8. The escrow agreement between Chang and Debtor provided that upon default, the non-breaching party would receive various documents, including the deed for the property, the bill of sale, assignment, remaining funds and all funds held on account by the escrow holder.

9. The contract for sale provided that Debtor and Fettig could buy the property from Chang and Cypress CB, LLC, for the price owing on a certain deed of trust, along with earnest money in the amount of $313,699.32.

10. The contract for sale contemplated that Chang and Cypress CB, LLC, would assign leases, security deposits, vendor contracts, and deliver deed for the property upon a closing date, which was to occur on or before June 7, 2008.

11. The closing did not occur.

12. Chang made a demand for release of the escrow documents so that he could attempt to sell the property. The demand was made by an email thread dated April 9 and 10, 2008.

13. Debtor released the escrow documents to Chang's control in an instrument dated May 5, 2008.

14. In the interim period between Chang's demand for release of documents, and the release of the escrow documents, Chang attempted to find buyers for the property. Chang received reasonable and legitimate offers from prospective buyers.

15. Chang sold the property, which closed on or about August 29, 2008.

16. Chang and the trustee agreed that the Court could make its determination of Chang's proof of claim from the attachments to the stipulation and the arguments of counsel. The parties agreed no live testimony would be provided.

17. The email correspondence between Chang and Debtor on or about April 25, 2008, in Exhibit X, is a true and accurate copy.

18. The trustee requested that Chang produce additional email correspondence from April and May, 2008, and if provided, such documents could be subsequently filed as an additional exhibit.

Section F of the escrow agreement states that all distributions pursuant to the escrow agreement shall be subject to the contract for sale and the terms and conditions contained therein.

Sections I and K of the escrow agreement state that should Debtor default under the terms of escrow agreement, the following items shall be delivered to Chang upon written notice to the escrow holder: the deed, the bill of sale, the assignment, Certificate One, Certificate Two, the remaining funds in the escrow account, and all funds held by JJ on account of the property. Both sections also state the parties have no further rights or obligations to each other, except as to the Management Agreement.

Section U of the escrow agreement states that to the extent that there are any inconsistencies between the escrow agreement and the management agreement, the terms of the escrow agreement shall control.

Chang filed a proof of claim (No. 28) in the amount of $214,391.14, and states in his brief the amount is for mortgage payments and losses.

A release consent was signed by Debtor and Fettig on May 5, 2008, releasing Certificate One, Certificate Two, the bill of sale, the special warranty deed, the assignment and assumption of leases and contracts, and $115.11, pursuant to the terms and conditions of the escrow agreement.

Chang received $150,000.00 for default under the contract for sale.

## CONCLUSIONS OF LAW

Chapter 9-07 of the North Dakota Century Code delineates the general provisions relating to the interpretation of a contract. Section 9-07-02 provides that the language of a contract is to govern its interpretation if the language is clear and explicit and does not contain any absurdity.

The trustee argues the series of documents give rise to any claim Chang might have. Specifically, the trustee argues that the parties entered into a contract for sale for an apartment complex, the contract for sale contemplated the remedies for default, and Chang received that remedy. The trustee argues that since the contract for sale would not close for a year, the parties entered into an escrow agreement providing certain terms pending the closing of the contract. Chang and Cypress CB then entered into a property management agreement with J&J RE Two LLC, a Wyoming company operated by Debtor and Fettig. Chang argues that the documents are separate documents and that he has additional remedies for Debtor's default pursuant to the escrow agreement.

In a transaction where the execution of one contract depends on the execution of other contracts, the contracts must be interpreted together. Dakota Gasification Co. v. Natural Gas Pipeline Co. of America, 964 F.2d 732, 734 (8th Cir. 1992) (citing Restatement (Second) of Contracts, § 202(2)(1981)). "The courts have long recognized that a contract may consist of

6

more than one instrument." Id. at 734-735 (citing St. Paul Fire & Marine Ins. Co. v. Tennefos Constr. Co., 396 F.2d 623, 628 (8th Cir. 1968)). The instruments "should be read together as they represent successive steps which were to accomplish a single purpose." Id. This rule of interpretation applies even though the parties executing the contracts differ, as long as "the several contracts were known to all the parties and were delivered at the same time to accomplish an agreed purpose," and even though the contracts did not internally reference each other. Id. at 735 (quoting Peterson v. Miller Rubber Co. of New York, 24 F.2d 59, 62 (8th Cir. 1928)). Further, hinging one contract upon the execution of another contract heightens the need for joint interpretation. Id.

In this case, there is no dispute the parties had a business relationship that involved the prospective sale of an apartment building. Several documents were executed at approximately the same time outlining the terms of the agreement because the contract for sale was not contemplated to close for a year. Had Debtor refused to sign the contract for sale, it is unlikely the parties would have entered into the escrow agreement or the property management agreement. Further, the instruments refer to each other throughout each document. Thus, the contract for sale, the escrow agreement and the property management agreement shall be read together as they represent successive steps which were taken to accomplish a single purpose.

It is undisputed that Debtor defaulted, that Chang kept the $150,000.00 for the default pursuant to the contract for sale, and that it was his sole and exclusive remedy pursuant to the contract for sale.

Two separate sections, I and K, of the escrow agreement state that should Debtor default under the terms of escrow agreement that the following items shall be delivered to Chang upon

7

written notice to the escrow holder: the deed, the bill of sale, the assignment, Certificate One, Certificate Two, the remaining funds in the escrow account, and all funds held by JJ on account of the property. Further, both sections also state the parties have no further rights or obligations to each other, except as to the management agreement. In accordance with the escrow agreement default provisions, a release consent was signed On May 5, 2008, releasing Certificate One, Certificate Two, the bill of sale, the specialty warranty deed, the assignment and assumption of leases and contracts and the amount remaining in the escrow account which originally contained $313,699.32 deposited by Debtor. The remaining funds in the escrow account released to Chang totaled $115.11.

Chang argues he has additional damages owed to him above and beyond the $150,000 he received pursuant to the contract for sale, and above and beyond the remaining funds he received from the escrow account pursuant to Sections I and K of the escrow agreement. Chang argues he has an additional remedy under Section S of the escrow agreement to collect the April 2008 mortgage payment, late fees and interest, etc. in the amount of $214,391.14.

Section S indemnifies Chang and the other owners from losses and costs resulting from entry or work performed on the property or any breach of the escrow agreement arising out of or resulting from any injury or damage incurred or sustained with respect to the property or with respect to any work, examination or inspection performed on the property.  In Chang's brief and in the stipulation, ellipses are used to summarize Section S. If Section S is read how Chang briefs it, it appears to be a broad indemnity clause for "any breach of the escrow agreement". Chang's omission of the language "arising out of or resulting from any injury or damage incurred or sustained' and "on or with respect to any work, examination, or inspection performed on the

8

property" gives the phrase "or any breach of this escrow agreement" a broader meaning than what the section actually states. However, Section S is not applicable in this case because there is no claim for a loss or cost resulting from entry or work performed on the property or for any breach arising out of or resulting from injury or damage incurred with respect to the property or work performed on the property.

Interpreting the contract for sale and the escrow agreement jointly, the Court finds Chang received the sole and exclusive remedy allocated to him in the contract for sale in the amount of $150,000.00. Section F of the escrow agreement also states that all distributions pursuant to the escrow agreement shall be subject to the contract for sale and the terms and conditions contained therein. Therefore, the court finds the portions of Sections K and I that require the defaulting party to release the remaining funds to the other party is in conflict with the contract for sale. Although the remaining funds at the time of the default was a relatively small amount of $115.11, should the default have occurred in the early stages, Chang could have potentially received a large sum of money that was not contemplated by the parties as a remedy. The remaining funds that were released to Chang in the amount of $115.11 shall be returned to Debtor and Fettig.

Based on the foregoing, the trustee's objection to Chang's proof of claim is sustained. Chang's claim in the amount of $214,391.14 is disallowed in its entirety.

**SO ORDERED.**

Dated this November 24, 2010.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**